IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION

FILED

May 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9612-CC-00514 |
| | ) | |
| Appellee | ) | |
| | ) | LINCOLN COUNTY |
| V. | ) | |
| | ) | HON. CHARLES LEE, |
| ANTHONY JOEL ALLEN, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Attempted Second Degree Murder) |
| | ) | |
| | ) | |

For the Appellant:

John Harwell Dickey
District Public Defender

Michael D. Randles
Assistant Public Defender
105 S. Main Street
Fayetteville, TN 37334
(At trial)

Curtis H. Gann
Assistant Public Defender
(On appeal)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Karen M. Yacuzzo
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

W. Michael McCown
District Attorney General

Frank Charles Crawford
James Barnes Cox
Assistant District Attorneys
215 E. College Street
Fayetteville, TN 37334

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

**OPINION**

The appellant, Anthony Joel Allen, Jr., appeals as of right his conviction in the Lincoln County Circuit Court of attempted second degree murder. Appellant was sentenced to ten years as a Range I offender. On appeal, he contends that the evidence was insufficient to support his conviction and that his sentence is excessive. After a thorough review of the record, we affirm the judgment of the trial court.

On the evening of May 21, 1995, John Berryhill, the victim, was driving from Wal-Mart to Funland on Highway 431 in Fayetteville. He approached from behind a red Ford Escort that was traveling slowly. Because his turn into the parking lot at Funland was very close, he remained behind the Escort. The driver of the Escort turned into the Funland parking lot and Berryhill followed, as it was his destination. The Escort stopped and the driver shouted at Berryhill, accusing him of tailgating. Heated words were exchanged between Berryhill and the driver of the Escort. Finally, Berryhill said, "Well, whatever," and began to drive away.

The Escort followed and Berryhill again stopped his car. The two men continued to argue about the alleged tailgating. The driver of the Escort and his passengers, appellant and Vincent McKinney, got out of the car and walked to Berryhill's car. Berryhill told the men to stay away from the car. Anticipating a confrontation, he reached on the console of his car for a hair tie to pull his hair into a ponytail. Suddenly, appellant pulled out a gun, pointed it at Berryhill, and fired a shot. Berryhill immediately began to drive away, but the appellant continued shooting, firing four more times. Berryhill testified that he was not in possession of a weapon that night and he did nothing intimidating before appellant began firing.

As Berryhill sped away, he made a U-turn in the parking lot and began chasing appellant and Vincent McKinney, who were on foot. As Berryhill approached, appellant turned and fired another shot at the car, striking the windshield. Berryhill then began to chase McKinney. However, both men were able to evade Berryhill.

2

Appellant fired a total of six shots. Three bullets lodged in the driver's side door, one struck the front fender, and another penetrated the side of the driver's seat. The last bullet struck the windshield of the car. Fortunately, Berryhill escaped unharmed. State witness Rebecca Parks corroborated the events that Berryhill related. Specifically, she stated that during the entire incident, Berryhill's hands remained on the steering wheel and he never made any threatening movement.

Appellant testified at trial and admitted that he fired the shots at the victim. However, in both his statement to police and at trial, he claimed that he did so in self-defense. According to appellant, Berryhill put his hair in a ponytail and then began to reach under the passenger's seat of the car. Fearing that Berryhill was trying to retrieve a weapon, appellant pulled a .380 pistol out of his pocket and fired at Berryhill. Appellant denied any intent to kill Berryhill, stating instead that he was just shooting at the car and did not aim at Berryhill. He also stated that he believed his life was in danger when he fired the shots.

On cross-examination, appellant admitted that he never saw Berryhill with any type of weapon, nor did he warn him that he was going to shoot. Appellant claimed that he continued to fire his weapon as Berryhill drove away because he perceived that Berryhill was still a threat.

Although indicted for the attempted first degree murder of Berryhill, the jury convicted appellant of the lesser offense of attempted second degree murder. The jury also imposed a fine of $5,000. At a subsequent sentencing hearing, the trial court found the presence of three enhancement factors and no mitigating factors to arrive at a sentence of ten years in the Department of Correction.

Appellant alleges that the evidence was insufficient to support his conviction for attempted second degree murder. He argues that since he was acting in self-defense, his actions did not constitute a "substantial step" and his entire course of conduct was not corroborative of an intent to commit the offense. See Tenn. Code

3

Ann. §39-12-101 (1991). He further submits that the jury did not give his self-defense testimony the same consideration as the testimony of other witnesses.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1979).

In essence, appellant's argument challenges the jury's decision to believe the State's witnesses instead of his self-defense testimony. However, issues concerning the credibility of witnesses and the weight and value to be given the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. While appellant and another defense witness testified to their belief that the victim reached for a weapon, the prosecution witnesses presented contrary testimony. Self-defense is a classic question for the jury to decide. Arterburn v. State, 391 S.W.2d 648, 653 (Tenn. 1965); State v. Fugate, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988).

The jury in appellant's case was instructed on the law applicable to self-defense. The trial court also properly instructed the jury with respect to considering and weighing the testimony of the witnesses. In exercising that duty, the jury accredited the State's witnesses and discredited appellant's theory of self-defense. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973) (jury's verdict of guilty accredits testimony of State's witnesses). We will not disturb that finding.

The evidence introduced at trial unquestionably supports the jury's verdict. Appellant readily admitted that he fired six shots at Berryhill. He fired the first shot while standing only twenty feet from Berryhill's car and it likely was the bullet which penetrated the side of the driver's seat where Berryhill was sitting. The remaining

4

bullets struck the victim's automobile in the driver's door, the fender, and the windshield. The jury was justified in concluding that appellant was aiming at Berryhill. The victim was not in possession of a weapon and never displayed one. We conclude, as did the jury, that appellant's actions were a substantial step toward the commission of second degree murder and were indicative of his intent to commit that offense. Tenn. Code Ann. §39-12-101 (1991); State v. Frederick R. Porter, No. 03C01-9606-CC-00238 (Tenn. Crim. App. at Knoxville, October 23, 1997), perm. app. filed (Tenn. February 2, 1998) (finding proof that the defendant deliberately aimed a pistol and shot several times at his intended victim is sufficient to support conviction for attempted second degree murder). Appellant's argument is without merit.

Appellant challenges his sentence as being excessive and contrary to law. He argues that the trial court incorrectly applied certain enhancement factors and that his sentence does not comport with the principles of sentencing. We disagree.

When a defendant challenges his or her sentence, we must conduct a *de novo* review of the record. Tenn. Code Ann. §40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. Tenn. Code Ann. §40-35-401 Sentencing Commission Comments. The presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the trial court considered relevant sentencing principles, we accord the trial court's order the presumption.

Appellant was convicted of a Class B felony which has a sentencing range of eight to twelve years for a Range I offender. Tenn. Code Ann. §40-35-112(a)(2) (1990). Procedurally, the trial court is required to begin with the minimum sentence in the range and then increase the sentence appropriately based upon enhancement factors. The sentence should then be appropriately reduced based upon the

presence and strength of any mitigating factors. Tenn. Code Ann. §40-35-210(e) (Supp. 1995).

In sentencing appellant to a mid-range ten year sentence, the trial court applied three enhancement factors: (1) that appellant had a previous history of criminal behavior; (9) that appellant employed a firearm in the commission of the offense; and (16) that the crime was committed under circumstances in which the potential for bodily injury to a victim was great. Tenn. Code Ann. §40-35-114 (Supp. 1995). Appellant does not contest the application of enhancement factor (9).

Appellant does contend, however, that the trial court erred in applying enhancement factor (1) when he had no prior criminal record. While the presentence report confirms that appellant has no prior convictions, the trial court nevertheless applied that factor because of appellant's previous criminal behavior. Appellant testified that he had been carrying the pistol used in this offense for two to three months and that he had no permit to carry it. The trial court determined that such criminal conduct could be used for enhancement, although it declined to place great weight on the factor.

The enhancement was proper. The plain language of the statute does not limit consideration to previous convictions only. The statute specifies a "previous history of criminal convictions *or criminal behavior*." Tenn. Code Ann. §40-35-114(1) (Supp. 1995) (emphasis added). While it is impermissible to use only arrest records to establish criminal behavior, enhancement is permissible when the episodes of criminal behavior are established by the testimony of witnesses. State v. William Jeffery Carico, No. 03S01-9610-CR-0009 (Tenn. Knoxville, April 27, 1998). See also State v. Hunter, 926 S.W.2d 744, 748-49 (Tenn. Crim. App. 1995), perm. app. denied (Tenn. 1996) (allowing victim's testimony of unindicted sexual abuse to establish criminal behavior).

Carrying a firearm with the intent to go armed is a criminal offense. Tenn. Code Ann. §39-13-1307 (1991). In his testimony, the appellant admitted his criminal

6

behavior; thus, the factor was applicable. Moreover, we note that appellant reported in the presentence report that he has used marijuana on a daily basis since age 16. That, too, constitutes criminal behavior and could have been considered in enhancing the sentence. State v. Dale Nolan, No. 01C01-9511-CC-00387 (Tenn. Crim. App. at Nashville, June 26, 1997), perm. app. denied (Tenn. 1998); State v. John L. Smith, No. 01C01-9309-CR-00308 (Tenn. Crim. App. at Nashville, October 20, 1994).

Appellant also contests the application of enhancement factor (16). He argues that the factor is inapplicable in the absence of proof that another person was in the line of fire when the shooting occurred. Application of the factor is warranted provided that individuals other than the victim are in the area and subject to injury. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995).[1] The record reflects that there were at least two other people present in the parking lot when appellant shot at Berryhill. The trial court did not err in its application of that enhancement factor.

Contrary to appellant's claims, the length of his sentence is fully supported by evidence in the record. Based upon the foregoing, we affirm appellant's conviction and sentence.

_____
William M. Barker, Judge


_____
Joe B. Jones, Judge


_____
Joe G. Riley, Judge

_____

[1]Appellant also challenges the trial court's application of enhancement factor (10), that defendant had no hesitation in committing a crime in which the risk to human life was high. The record reveals that the trial court declined to apply that factor to enhance appellant's sentence. However, when persons other than the victim are present in the area and in danger of appellant's gunfire, both factor (10) and (16) may be applied. Sims, 909 S.W.2d at 50. See also State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994) (applying factor (10) when other people present could have been injured).